UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY | CIVIL ACTION |
| VERSUS | NO. 26-1076 |
| ANGELA C. MESMAN ET AL. | SECTION R (1) |

## ORDER AND REASONS

Before the Court is the motion of defendant EMSCO Sales, LLC's ("EMSCO") to dismiss under Federal Rule of Civil Procedure 12(b)(1).[1] Also before the Court is the motion of defendants Angela C. Mesman, Donald Lee Mesman III, and Indy-Han Emmett Mesman ("the Mesmans") to dismiss under Federal Rule of Civil Procedure 12(c) or in the alternative to stay proceedings.[2] For the following reasons, the Court DENIES the motions.

## I. BACKGROUND

On August 21, 2024, the Mesmans filed a petition for wrongful death and a survival action in the Civil District Court for the Parish of Orleans ("the underlying litigation").[3] The Mesmans sued Nucor Steel Louisiana LLC ("Nucor") and Buck Kreihs Marine Repair, LLC ("Buck Kreihs") for the death

---

1 R. Doc. 16.
2 R. Doc. 25.
3 R. Doc. 1-1.

of Donald Lee Mesman, Jr. ("Mr. Mesman") pursuant to Louisiana Civil Code Articles 2315.1 and 2315.2, alleging that their negligent and intentional acts caused the death of Mr. Mesman.[4] On August 15, 2025, the Mesmans filed a First Supplemental and Amending Petition adding EMSCO as a defendant, alleging that EMSCO's negligence caused or contributed to Mr. Mesman's death.[5]

On October 20, 2025, Scottsdale Insurance Company ("Scottsdale") agreed to participate in the defense of EMSCO under an insurance policy issued to EMSCO ("the Policy"), subject to a reservation of rights.[6] On May 19, 2026, Scottsdale filed this declaratory judgment action against EMSCO and the Mesmans seeking declarations that it owed no duty to defend or indemnify EMSCO in the underlying litigation based on the Policy's Injury to Worker Exclusion.[7] Scottsdale also seeks reimbursement for the defense costs it has already incurred in the underlying litigation.[8]

On August 4, 2026, the Mesmans filed a Second Supplemental and Amending Petition adding Scottsdale as a defendant in the underlying

---

4 *Id.*
5 R. Doc 1-2.
6 R. Doc. 1-4.
7 R. Doc. 1.
8 *Id.*

litigation.[9] The Mesmans relied on La. R.S. 22:1269(B)(1)(g), which provides for a direct action against an insurer "when the insurer is defending the lawsuit under a reservation of rights . . . but only for the purpose of establishing coverage." La. R.S. 22:1269(B)(1)(g).

EMSCO now moves to dismiss Scottsdale's claim for a declaration that it has no duty to indemnify EMSCO in the underlying litigation under Federal Rule of Civil Procedure 12(b)(1). EMSCO argues that the duty-to-indemnify claim is not ripe for adjudication. Scottsdale opposes the motion.

The Mesmans move to dismiss Scottsdale's declaratory judgment claim under Federal Rule of Civil Procedure 12(c).[10] They argue that, because the applicability of the Policy's exclusions has not yet been established in the underlying litigation, the court should abstain from entertaining Scottsdale's declaratory judgment action.[11] Scottsdale opposes the motion.[12]

The Court considers the motions below.

---

9 R. Doc. 25-4.
10 R. Doc. 25.
11 *Id.*
12 R. Doc. 27.

## II. LEGAL STANDARD

### A. Federal Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of an action without prejudice if a court lacks jurisdiction over the subject matter of the plaintiff's claim. *See Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020), *as revised* (Dec. 30, 2020). Motions submitted under Rule 12(b)(1) allow a party to challenge the court's subject matter jurisdiction based upon the allegations on the face of the complaint. *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). In ruling on a 12(b)(1) motion to dismiss, the court may rely on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by the undisputed facts plus the court's resolution of disputed facts." *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017) (quoting *Barrera-Montenegro*, 74 F.3d at 659). The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *See Spokeo v. Robins*, 578 U.S. 330, 338 (2016).

"[R]ipeness is a constitutional prerequisite to the exercise of jurisdiction." *Inst. for Free Speech v. Johnson*, 148 F.4th 318, 331 (5th Cir. 2025). A case is ripe only when it "would not benefit from any further factual development and when the court would be in no better position to adjudicate

the issues in the future than it is now." *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010).

The Declaratory Judgment Act ("DJA") is intended "to settle actual controversies before they ripen into violations of law or breach of some contractual duty." *United Transp. Union v. Foster*, 205 F.3d 851, 857 n.8 (5th Cir. 2000). Although the DJA "enlarged the range of remedies available in the federal courts," it did not "create a new right to seek those remedies." *Harris County v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015). Thus, in order to obtain relief under the DJA, the plaintiff still must demonstrate that the dispute is ripe for adjudication. *Lower Colorado River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 924 (5th Cir. 2003).

**B. Federal Rule 12(c)**

In deciding a Rule 12(c) motion, the Court must determine whether the complaint, viewed in the light most favorable to the plaintiff, states a valid claim for relief. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Motions under Rule 12(c) may be filed only "after the pleadings are closed." Fed. R. Civ. P. 12(c). At this stage, the Court "accepts all well-pleaded facts as true." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "Judgment on the pleadings is appropriate only if material facts are not in dispute and questions of law are all that

remain." *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. 1998).

## III. DISCUSSION

Scottsdale argues that it does not owe a duty to indemnify EMSCO in the underlying litigation under the terms of the Policy.[13] Scottsdale first relies on the "Additional Insured" provision in the Policy, which provides:

> **Section II – Who Is An Insured** is amended to include as an additional insured [Nucor], but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **1.** [EMSCO's] acts or omissions; or
>
> **2.** The acts or omissions of those acting on [EMSCO's] behalf;
>
> In the performance of [EMSCO's] ongoing operations for [Nucor].[14]

Scottsdale also relies on the Policy's "Injury to Worker Exclusion," which provides that:

> This insurance does not apply to:
>
> **(1)** "Bodily injury" to:
> **a.** An "employee," "leased worker," "temporary worker" or "volunteer worker" of any insured;

---

13 R. Doc. 17 at 3–4.
14 R. Doc. 1-3 at 37–38.

> **b.** Any contractor, subcontractor, sub-subcontractor or anyone hired or retained by or for any insured; or
>
> **c.** Any employee or anyone directly or indirectly employed by such contractor, subcontractor or sub-subcontractor or anyone for whose acts such contractor, subcontractor or sub-subcontractor may be liable
>
> If such "bodily injury" arises out of and in the course of their employment or retention of such contractor, subcontractor or sub-subcontractor, regardless of whether or not it is caused in part by [EMSCO].
>
> . . .
>
> **(3)** "Bodily injury" to the spouse, child, parent, brother or sister of that employee of any contractor, subcontractor, or sub-subcontractor or that "employee, "leased worker," "temporary worker" or "volunteer worker" of any insured as a consequence of items **1.** or **2.** above.[15]

Based on the Mesmans' allegation that Mr. Mesman was an employee of Nucor,[16] Scottsdale argues that the Policy's provisions preclude EMSCO from receiving coverage if the underlying litigation finds that Mr. Mesman's death was "caused, in whole or part, by" EMSCO's acts or omissions.[17]

---

15 *Id.* at 58–59.

16 R. Doc. 1 at 5 (citing R. Doc. 1-1 at 3).

17 R. Doc. 1 at 12–14.

**A. EMSCO's Rule 12(b)(1) Motion**

EMSCO moves to dismiss Scottsdale's claim for a declaratory judgment, arguing that Scottsdale's duty to indemnify claim is not ripe.[18]

An insurer's duty to defend and indemnify its insureds are "distinct and separate duties." *Liberty Mut. Fire Ins. Co. v. Copart of Connecticut, Inc.*, 75 F.4th 522, 535 (5th Cir. 2023). For ripeness purposes, the duty to indemnify is typically not justiciable before the underlying issue of liability is resolved. *Hartford Cas. Ins. Co. v. DP Eng'g, L.L.C.*, 827 F.3d 423, 430 (5th Cir. 2016). This is because "the duty to indemnify is triggered by the actual facts that establish liability in the underlying lawsuit." *Columbia Cas. Co. v. Georgia & Florida Railnet, Inc.*, 542 F.3d 106, 110–11 (5th Cir. 2008). But if "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify," a court may address the duty to indemnify before the resolution of the underlying litigation. *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 536–37 (5th Cir. 2004). Thus, "where the duty to defend is not at issue and where it is apparent before liability is resolved in the underlying case that the Policy

18 R. Doc. 16-1 at 1.

cannot cover the claim, the question of indemnity may be determined." *Railnet*, 542 F.3d at 111.[19]

In *Railnet*, a railroad purchased an insurance policy from an insurer. *Id.* at 107. The railroad was then sued by its employee in state court for injuries suffered on the job. *Id.* Before the state court claims were resolved, the insurer brought a declaratory judgment action in federal court to determine its obligations under the policy. *Id.* Specifically, the insurer sought a declaration that it owed no duty to defend and no duty to indemnify in the state court suit under the exclusions in the insurance policy. *Id.* at 109. The district court granted the declaratory relief, finding that the state court claims were excluded from coverage under the terms of the insurance policy. *Id.* On appeal, the railroad argued that the duty-to-indemnify claim was not ripe because the state court suit was still pending. *Id.* at 110. But the Fifth Circuit affirmed the district court's ruling, finding that the duty-to-indemnify claim was ripe because "the insurer has no duty to defend and the same

19 Although *Railnet* and *Northfield* refer to the duty to defend and the duty to indemnify under Texas law, the Fifth Circuit has found that Louisiana applies the same rule as Texas on this issue. *See LCS Corrections Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 668 n.5 (5th Cir. 2015); *see also Atain Specialty Ins. Co. v. VIG II, LLC*, 2017 WL 3867672, at *8 (E.D. La. Feb. 9, 2017) (applying this principle under Louisiana law).

reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Id.* at 111.

Here, as in *Railnet*, Scottsdale seeks a declaratory judgment that it owes EMSCO neither a duty to defend nor a duty to indemnify in the underlying litigation. And as in *Railnet*, EMSCO argues that the duty to indemnify claim is not ripe because unresolved factual questions in the underlying litigation will determine whether Scottsdale must indemnify EMSCO.[20] In response, Scottsdale argues that it owes no duty to indemnify, regardless of how the liability issues in the underlying litigation are resolved.[21] It contends that the duty to indemnify claim is therefore ripe for adjudication.

The Court finds that the duty to indemnify claim is ripe. Although the duty to indemnify is generally not ripe before the underlying issue of liability is resolved, this case falls into the exceptional category of cases in which "the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Id.* at 111.

---

20 R. Doc. 16-1 at 1.
21 R. Doc. 17 at 10.

There is no possibility that the facts will develop in the underlying litigation to trigger coverage under the Policy. Louisiana's "Eight Corners Rule" provides that the Court must assess whether there is coverage "by applying the allegations of the complaint to the underlying policy without resort to extrinsic evidence." *Martco Ltd. Partnership v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009). Here, the Policy's Additional Insured Clause extends coverage to Nucor for bodily injury "caused, in whole or in part" by EMSCO's acts or omissions.[22] But the Policy's Injury to Worker Exclusion provides that coverage does not extend to bodily injury to the employee of any insured, "regardless of whether or not it is caused in part by [EMSCO]."[23] Further, the complaint in the underlying litigation alleges that Mr. Mesman was an employee of Nucor.[24]

The Mesmans allege in the underlying litigation that EMSCO caused Mr. Mesman's death.[25] But if EMSCO *is* found to have caused Mr. Mesman's death in the underlying litigation, there will be no coverage, because Mr. Mesman was an employee of "any insured" under the Policy: Nucor. And if EMSCO *is not* found to have caused Mr. Mesman's death in the underlying

---

22 R. Doc. 1-3 at 37–38.
23 *Id.* at 58–59.
24 R. Doc. 1-2 at 4.
25 *Id.* at 5.

litigation, there will be no coverage because EMSCO will not be liable. So regardless of how the underlying litigation develops, there is no possibility of coverage. Thus, this case falls into the Fifth Circuit's *Railnet* exception, and the duty to indemnify claim is ripe for adjudication.

EMSCO argues that the question of coverage relies on the development of unresolved facts in the underlying litigation.[26] But EMSCO offers no possible situation in which coverage could actually be triggered under the Policy. EMSCO's vague references to "factual determinations that remain unresolved"[27] in the underlying litigation do not overcome the impossibility of coverage in the underlying litigation under the terms of the Policy. Thus, because there is no possibility of coverage in the underlying litigation, the duty to indemnify claim is ripe for adjudication.

### B. The Mesmans' Rule 12(c) Motion

The Mesmans move to dismiss or stay Scottsdale's declaratory judgment claims under Federal Rule of Civil Procedure 12(c).[28] Their motion is timely, as they have filed their answer and the pleadings have closed.[29] Relying on *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942), and

---

26 R. Doc. 16-1 at 3.
27 *Id.*
28 R. Doc. 25.
29 R. Doc. 21.

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) (together, "*Brillhart-Wilton*"), the Mesmans argue that the Court should abstain from hearing Scottsdale's declaratory claims because the coverage controversy could be better resolved in the underlying litigation.[30] They assert that either a dismissal or a stay of Scottsdale's declaratory judgment claims would be appropriate given the nascent status of the underlying litigation.[31]

Scottsdale contends that *Brillhart-Wilton* abstention does not apply, and that *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), governs the abstention issue.[32] And Scottsdale contends that, because *Colorado River* abstention requires that the state and federal proceedings be parallel, abstention is improper here.

The Court finds that *Colorado River* is the applicable abstention doctrine. The Fifth Circuit has held that "a declaratory action that also seeks coercive relief is analyzed under the *Colorado River* standard." *New England Ins. Co. v. Barnett*, 561 F.3d 392, 396 (5th Cir. 2009) (per curiam). Here, Scottsdale seeks a money judgment for reimbursement of defense costs and fees incurred in the underlying litigation.[33] The Fifth Circuit has

30 R. Doc. 25 at 5.
31 *Id.*
32 *Id.* at 1–2.
33 R. Doc. 1 at 14

held that this coercive relief in an insurance dispute triggers *Colorado River*, not *Brillhart-Wilton*. *See American Guarantee & Liability Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 251 (5th Cir. 2005). Indeed, "it is immaterial" that the claim for reimbursement "may be ancillary to the declaratory claim." *Id.* at 251 n.15. Thus, *Colorado River*, not *Brillhart-Wilton*, applies here.

Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. But under *Colorado River*, "in 'extraordinary and narrow' circumstances, a district court may abstain from exercising jurisdiction over a case when there is a concurrent state proceeding." *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 737–38 (5th Cir. 1999) (quoting *Colorado River*, 424 U.S. at 813). As a threshold matter, federal courts may abstain from hearing a case under *Colorado River* only when the state and federal proceedings are "parallel, having the same parties and the same issues." *Stewart v. Western Heritage Ins. Co.*, 438 F.3d 488, 491 (5th Cir. 2006).

Although Scottsdale was recently added as a defendant in the underlying litigation, the two proceedings do not cover the same issues. Indeed, Scottsdale's claim for the expenses it has incurred in defending EMSCO is not at issue in the underlying litigation, nor is its duty to defend.

The Fifth Circuit has held that a district court lacked discretion to abstain under *Colorado River* in analogous circumstances. *See Anco*, 408 F.3d at 251–52 (finding that because "the state action [did] not encompass" the insurer's claim for amounts paid to defend, the district court "lacked discretion under *Colorado River* to stay in favor of the state suit."). Moreover, several defendants and claims in the underlying litigation are not at issue here. The Fifth Circuit has held that this difference in issues and parties also weighs against a finding that the federal and state proceedings are parallel. *Id.* at 252. Thus, because the federal proceedings and state proceedings are not parallel, abstention is not proper here.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the motions to dismiss.

New Orleans, Louisiana, this 26th day of October, 2026.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE